**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wanda Tindle, | No. CV-11-907-PHX-LOA |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits. 42 U.S.C. § 405(g). The parties, who have consented to proceed before the United States Magistrate Judge, have filed briefs in accordance with Local Rule of Civil Procedure 16.1. After review of the record, briefing, and the applicable law, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

**I. Procedural Background**

On November 15, 2005, Plaintiff filed an application for Disability Insurance Benefits, alleging disability with an onset date of October 15, 2005. (Tr. 99[1]) The claim was denied initially and upon reconsideration. (Tr. 30-33) Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held a *de novo* hearing in July 2008 and a supplemental hearing in April 2009. (Tr. 22-29) On October 7, 2009, the ALJ issued a

---

[1] Citations to "Tr." are to the administrative transcript which appears at docket 19.

1 decision finding Plaintiff was not disabled under the Social Security Act. (Tr. 11-21) This
2 decision became the final decision of the Commissioner of Social Security when the Social
3 Security Appeals Council denied Plaintiff's request for review. (Tr. 1-5) Plaintiff now seeks
4 judicial review of this decision, pursuant to 42 U.S.C. § 405(g).

## II. Applicable Legal Standards

### A. Sequential Evaluation Process

A "disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant shows she is unable to perform past relevant work, the burden shifts to the Commissioner to demonstrate that the claimant "can perform other substantial gainful work that exists in the national economy." *Takcett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

An ALJ determines an applicant's eligibility for disability insurance benefits by following the five steps listed below:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a "medically severe impairment or combination of impairments";

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant has the residual functional capacity to perform his or her past relevant work;

> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

*Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). At the fifth step, the burden of proof shifts to the Commissioner. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).

Applying the five-step analysis, the ALJ found that: (1) Plaintiff has not engaged in substantial gainful activity since October 15, 2005; (2) Plaintiff has the following severe impairments: diabetes, controlled by medication; mild degenerative disc disease; major depressive disorder, periodicly recurrent; post-traumatic stress disorder ("PTSD") (20 C.F.R. § 404.1520(c) and 416.920(c); and (3) Plaintiff's impairments do not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14) The ALJ further found that Plaintiff retains the residual functional capacity to perform "light work." (Tr. at 15)  The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 20)

**B. Standard of Review**

A district court must affirm the Commissioner's findings if they are supported by substantial evidence and are free from legal error. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (*per curiam*); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In determining whether substantial evidence supports a decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Sandgathe,* 108 F.3d at 980 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)).

The ALJ is responsible for resolving conflicts, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d 1035 at 1039; *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If sufficient evidence supports the ALJ's determination, the court cannot substitute its

own determination. *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Moreover, if a reasonable mind could understand the evidence to support either outcome, the court must defer to the ALJ's decision. *Richardson v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992) (citations omitted). If on the record as a whole, substantial evidence supports the ALJ's decision and it is free from legal error, the court must affirm it. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C.A. § 405(g). Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

**III.  Facts**

   **A.  Plaintiff's Background**

Plaintiff was 48 years old at the time of the administrative hearing. (Tr. 93) Plaintiff has an eighth-grade education with additional training as a certified nurse's aide ("CNA"). (Tr. 132) Her past work includes a CNA in a nursing home and a cashier in a restaurant or retail environment. (Tr. 13, 128)

   **B.  Medical Record**

Plaintiff's health issues include a herniated disc in her lower back, diabetes, fibromyalgia, depression, and PTSD.

      **1.  Physical Health**

In the fall of 2005, Plaintiff was treated by Jack Weidner, D.O., at Cerbat Medical Center for "persistent back pain and severe radiation of pain down the left leg." (Tr. 226-227, 229-230, 232-33) Dr. Weidner ordered an MRI of Plaintiff's lumbar spine which revealed broad based posterior disc bulging at L4-5 with some central disc herniation present but no definite nerve root impingement. (Tr. 246) Dr. Weidner diagnosed low-back pain with radiculopathy. (Tr. 226) In a December 12, 2005 medical statement completed for the Arizona Department of Economic Security ("DES"), Dr. Weidner confirmed that Plaintiff had "neurological disease (*any*) . . . with observable limitations on walking/standing." (Tr. 529) (emphasis in original). He also answered "yes," to the following statements: "Does this person

1  have a physical or mental incapacity which prevents him/her from performing any substantially
2  gainful employment," and "In my medical opinion, I believe this patient has a medical
3  impairment which is expected to result in death, OR which has lasted or can be expected to last
4  for a continuous period of not less than 12 months." (*Id*.) On December 4, 2006, Dr. Weidner
5  completed the "Medical Certification" section on Plaintiff's application for a "Disability . . .
6  Plate/Placard" with the Arizona Motor Vehicle Division ("MVD"). (Tr. 527) Dr. Weidner
7  checked a box on the application approving a "Temporary Disability Placard (must be
8  recertified after 6 months)" and signed his name. On referral from Dr. Weidner, Plaintiff saw
9  M.A. Paracha, M.D., a neurologist, in January 2006. Upon examination, Plaintiff had moderate
10 paraspinal spasm but range of motion and strength were normal. Plaintiff was alert and oriented
11 and her affect was normal. Plaintiff also exhibited a normal gait and was able to heel, toe, and
12 tandem walk. Nerve conduction studies showed no evidence of radiculopathy, plexapathy, large
13 fiber polyneuropathy or mononeuropathy. (Tr. 256-59)

14       In November 2006, David Rand, M.D., a state agency physician, reviewed the record
15 and completed a Physical Residual Functionality Capacity Assessment. (Tr. 314) He opined
16 that Plaintiff's impairments would permit her to perform light exertional work. (Tr. 314-21)
17 Dr. Rand noted that the objective evidence did not support Plaintiff's alleged inability to lift
18 more than five pounds or stand more than thirty minutes. (Tr. 319)

19       In May 2007, Plaintiff saw Jason Taylor, D.O., for a consultative evaluation in
20 connection with her application for benefits. Plaintiff indicated that she had injured her back
21 in 2002 when carrying wood at home. (Tr. 403-07) She complained of chronic low back pain.
22 Upon examination, Dr. Taylor found that Plaintiff was not in significant distress and had
23 essentially normal examination findings. Plaintiff's hobbies included camping, bike riding, and
24 walking. Plaintiff had essentially a normal range of motion with some restriction in the lumbar
25 spine; full (5/5) strength in all four extremities; and normal straight leg raising. Dr. Taylor
26 opined that Plaintiff was limited to standing and walking 4-6 hours in an eight-hour with no
27 limitations on sitting. (Tr. 406)

28

**2. Mental Health**

In March 2006, Plaintiff began treatment with Mohave Mental Health Clinic. (Tr. 356) She was diagnosed with depression and PTSD. (*Id.*)

On March 18, 2006, Plaintiff saw psychologist Doris Javine, Ph.D., on referral from DES for a psychiatric evaluation. (Tr. 290) Dr. Javine noted that Plaintiff was appropriately dressed and groomed, with good hygiene and a normal gait. Plaintiff's mental status was alert and cooperative. Upon examination, Plaintiff was fully oriented and noted to have a good prognosis. Dr. Javine diagnosed Plaintiff with PTSD and major depression, recurrent. (Tr. 293)

On February 23, 2007, Plaintiff saw psychologist Shelly K. Woodward, Ph.D, on referral from DES for a psychiatric evaluation. (Tr. 376) Dr. Woodward noted that Plaintiff was seeking disability benefits because of problems related to depression and "neuropathy or a pinched nerve" in her right leg. (*Id.*) Dr. Woodward found Plaintiff's mental status alert and cooperative and did not note any gross abnormalities. Dr. Woodward diagnosed PTSD and depression. (Tr. 378) She completed a Medical Source Statement of Ability to do Work Related Activities (Mental). (Tr. 380) Dr. Woodward found Plaintiff was moderately limited in her ability to maintain concentration, respond to changes in the work setting, and was aware of normal hazards. (Tr. 381, 384) She found that Plaintiff had marked limitations in her ability to work in coordination with others. (Tr. 382)

On March 9, 2007, Grace Fletcher, Ph.D, a state agency psychologist, reviewed the record and completed a Psychiatric Review Technique form. (Tr. 386) She opined that Plaintiff had only mild mental functional limitations and that her mental condition was non-severe. (Tr. 396-98) Dr. Fletcher noted that "[t]here is no evidence that claimant is distractable around coworkers, but rather only in regard to anyone who resembles [her] ex-husband." (*Id.* at 398)

In September 2008, Plaintiff was seen by psychologist Minette Nance Doss, Ed.D, on referral from DES for a psychological evaluation. (Tr. 531) Dr. Doss noted that Plaintiff maintained meaningful daily life activities including working 20 to 23 hours per week. (Tr. 532-33) Plaintiff's mental status was alert, cooperative, and verbally articulate. Upon examination, she was fully oriented and her appearance was neat and clean. (Tr. 534) Dr. Doss diagnosed

mood disorder due to chronic pain with depressive features, chronic PTSD, and borderline intellectual functioning. (Tr. 531) Dr. Doss assigned a Global Assessment Functioning ("GAF") score of 60 noting "moderate symptoms." (*Id.*) On October 2, 2008, Dr. Doss completed a Medical Source Statement Ability to do Work-Related Activities (Mental). (Tr. 541) She found that Plaintiff's ability to understand, remember, and carry out simple instructions was not restricted, and that her "ability to make judgments on simple work-related decisions" was mildly restricted. (*Id.*) Dr. Doss found Plaintiff was moderately limited in her ability to understand, remember, and carry out complex instructions; "make judgments on complex work-related decisions"; and "[i]nteract appropriately with the public." (Tr. 541-42) Dr. Doss found no restrictions on Plaintiff's ability to "[i]nteract appropriately with supervisors [and] co-workers, and mild restrictions on her ability to "respond appropriately to usual work situations and to changes in a routine work setting." (*Id.*)

**IV. Hearing Testimony**

Vocational expert, George Bluth, testified at the April 2009 administrative hearing. He testified that Plaintiff's past relevant work as a cashier was unskilled, light-exertional work, and that her past work relevant work as a CNA was semi-skilled, medium-exertional work. (Tr. 25) Dr. Bluth testified that someone with the same vocational experience as Plaintiff and with residual capacity assessed by the ALJ, could not perform Plaintiff's past work but could perform other work existing in significant numbers in the national economy, including assembly worker and quality control inspector. (Tr. 26-27) In response to questioning from Plaintiff's counsel, Dr. Bluth testified that there would be no work available for someone with "moderate" and "marked" mental limitations described by Dr. Woodward, or the "moderate" limitations in persistence and the pace alleged by Plaintiff. (Tr. 27-28)

**V. The ALJ's Decision**

The ALJ denied Plaintiff's application for disability benefits after applying the sequential evaluation process, 20 C.F.R. § 404.1520(a)(4). At the first step, the ALJ found that Plaintiff had not performed any substantial gainful activity since her disability onset date, October 15, 2005. (Tr. 13) At the second step, the ALJ found Plaintiff had the following severe

- 7 -

impairments: "diabetes, controlled by medication; mild degenerative disc disease; major depressive disorder, periodic recurrent; [and] [PTSD]." (Tr. 13) The ALJ found the severity of Plaintiff's impairments did not meet or equal the criteria of any impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.* at 14) The ALJ found Plaintiff's subjective complaints were not fully credible, and that she had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.927(b), except that she "is limited to walking four to six hours in an eight hour workday . . . lift[ing] or carry[ing] twenty pounds occasionally and ten pounds frequently[; and] occasionally climbing, crawling, crouching, stooping, kneeling, and reaching." (Tr. 15) The ALJ further noted that Plaintiff had moderate limitations, "but can function satisfactorily, in the ability to carry out and follow instructions," and she "can make simple work-related decisions and can interact with the public." (Tr. at 16) The ALJ determined that Plaintiff could not perform her past relevant work, but could perform other work existing in significant numbers in the national economy, including assembly worker and quality control inspector. (Tr. 19-20) Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 20)

## VI. Analysis

In support of her request for review of the denial of her claim for disability benefits, Plaintiff presents three claims: the ALJ erred by rejecting the opinions of treating sources; the ALJ misinterpreted the evidence to Plaintiff's detriment; and the ALJ, "based upon the objective evidence of record, should have offered, at least, a finite period of disability." (Doc. 20 at 2) Defendant opposes Plaintiff's assertions. As discussed below, the Court remands this case for further proceedings.

### A. Treating Source Opinion - Medical

Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician, Dr. Weidner. Specifically, Plaintiff refers to Dr. Weidner's 2005 opinion on a DES form indicating that Plaintiff could not perform full-time employment, and to Dr. Weidner's approval of a disabled placard based on his opinion that Plaintiff was severely limited in her ability to walk. (Doc. 20 at 6; Tr. 527, 529) Plaintiff argues that the ALJ committed legal error because his

- 8 -

failure to discuss Dr. Weidner's treatment or opinions amounted to rejection of those opinions without specific and legitimate reasons.

An ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). Treating physician's opinions are entitled to more weight than the opinions of other physicians because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1987). An ALJ may reject a treating or examining physician's uncontradicted medical opinion but may do so only when based on "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Where such an opinion is contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (citation omitted). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Defendant states that the ALJ "implicitly rejected" Dr. Weidner's opinion and provided legitimate reasons for doing so, including his notations in the record that Plaintiff had received only conservative treatment for her back pain, and her diagnostic testing showed only mild degenerative disc disease and mild disc bulging. (Doc. 23 at 9) However, "such an implicit rejection flies in the face of the well-established law of this circuit." *Kreisher v. Astrue,* 2011 WL 837147, * 4 (E.D.Cal. March 9, 2011) (citing *Lester*, 81 F.3d at 830-31) (a treating physician's opinion that is contradicted may be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record"); *Magallanes*, 881 F.2d at 751 ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). Here, the ALJ did not even mention Dr. Weidner's opinions or treatment of Plaintiff. The ALJ

necessarily failed to substantiate his implicit rejection of Dr. Weidner's opinion that Plaintiff was unable to perform full-time work and was severely limited in her ability to walk. Because Dr. Weidner was a treating physician, the ALJ owed his opinion special deference. The ALJ's failure to set forth specific and legitimate reasons rejecting Dr. Weidner's opinion was legal error. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (finding that ALJ's implicitly rejected treating physician's opinion by concluding that claimant could perform light work, and ALJ's failure to evaluate the treating physician's findings or conclusions was legal error); *Kreisher*, 2011 WL 837147, at * 4 (finding that ALJ erred in failing to address claimant's treating physician's medical opinion and remanding for further proceedings). Moreover, the ALJ's error in this regard does not constitute harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'") (citations omitted). Because the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Weidner's opinions, the case must be remanded for further proceedings. The Court declines to reach Plaintiff's remaining arguments.

**B. Remand or Award Benefits**

Plaintiff requests that the Court award her benefits if it finds that the ALJ erred in determining that she was not disabled. (Doc. 1, ¶ 1 at 2) The Commissioner does not address the issue whether the Court should award Plaintiff benefits or remand for further proceedings if it finds, as it does, that the ALJ erred in determining that Plaintiff was not disabled.

Courts credit improperly rejected evidence and remand for benefits when: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved . . . , and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (internal quotation marks omitted). Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the improperly rejected opinions of Dr. Weidner where credited, the Court will not remand for benefits. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007). Rather, the Court exercises its discretion not to award benefits because

- 10 -

"[t]here may be evidence in the record to which the [ALJ] can point to provide the requisite specific and legitimate reasons for disregarding" Dr. Weidner's opinion. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the ALJ for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant Michael J. Astrue, Commissioner of Social Security, and terminate this action.

DATED this 21st day of May, 2012.

Lawrence O. Anderson
United States Magistrate Judge